·(April 21, 1892.)·

STATE v. DOHERTY ET AL.

[29 Pac. 855.]

STATUTE—TITLE—LICENSE TAX—GRADUATION—CONSTITUTIONAL LAW—REVENUE LAW—POLICE REGULATION.

STATUTE—CHANGE OF TITLE AFTER SAME HAS BEEN PASSED BY BOTH HOUSES.—1. An act entitled "An act to regulate the sale of intoxicating liquors in less quantities than one quart," was passed by the House of Representatives and transmitted to the Senate. By the Senate amendments to said act all of that part of said act referring to the sale of intoxicating liquors, in quantities less than one quart, was stricken out. Thereafter the bill was returned to the House as amended by the Senate, which amendments were concurred in by the House. Thereafter ·the title of the act was amended by the House by striking out the words following, to wit, "In less quantities than one quart." After said title was so amended the bill was not transmitted to the Senate for its concurrence in said amendment, but was properly enrolled with the title as amended by the House, and thereafter approved by the Governor. *Held*, that the amendment of the title as made by the House was not one of substance, and did not invalidate said act.

TITLE OF ACT.—2. The subject of said act is fairly indicated by the title, and said title is comprehensive enough to include the provisions contained in said act in regard to a license tax.

TAXATION UNDER CONSTITUTION.—3. The provisions of sections 2 and 5, article 7 of the constitution of Idaho, requiring equality and uniformity of taxation upon the same class of subjects, is not applicable to the license tax imposed by section 4 of an act entitled "An act to regulate the sale of intoxicating liquors." (1st Sess. Laws Idaho, 34.)   Said act is a police regulation.

LICENSES GRADUATED.—4. As a police regulation the price of licenses may be graduated by some standard, *provided* such standard is reasonably fair and just.

SAME.—5. The standard of graduation provided by section 4 of said act is reasonably fair and just.

(Syllabus by the court.)

APPEAL from District Court, Shoshone County.

Jones & Harkness, for Appellants.

The only limitation upon the taxing power of the legislature is equality and uniformity. (*People v. Burr,* 13 Cal. 343; *People v. Seymour,* 16 Cal. 332, 76 Am. Dec. 521, and note; *Beals v. Amador Co.,* 35 Cal. 624; *Railroad Co. v. Stockton,* 41 Cal. 148; *People v. Brooks,* 16 Cal. 11.)   Uniformity requires that the law affect alike all persons or things of the same class. (*People v. Coleman,* 4 Cal. 46, 60 Am. Dec. 581; *Brooks v. Hyde,* 37 Cal. 367; *Ex parte Smith,* 38 Cal. 710; *Ex parte Lichtenstein,* 67 Cal. 359, 56 Am. Rep. 713, 7 Pac. 728.)   The word "taxes" embraces all impositions made by the government upon the person, property, principles, enjoyments, and occupations of the people for the purpose of a public revenue.   (7 Lawson's Rights, Remedies, and Practice, sec. 3879.)   A license fee for the transaction of business is a tax.   (*City of Santa Barbara v. Stearns,* 51 Cal. 499; *License Tax Cases,* 5 Wall. 462.)   Ordinances fixing a higher rate of license for sample sellers than for other merchants is invalid.   (*Ex parte Frank,* 52 Cal. 606, 28 Am. Rep. 642.)   The legislature cannot designate one class of persons because of their race as special objects of taxation.   (*Lin Sing v. Washburn,* 20 Cal. 534.)   Discrimination in favor of or against any classes of property or persons whatsoever must be precluded.   (*Primm v. Belleville,* 59 Ill. 142.)

Charles W. O'Neil, for the State.

Regulation is the object of the constitution in granting the power to impose license taxes. (Cooley on Taxation, 2d ed., 597.)

Hawley & Reeves, *amici curiae.*

A license tax upon a business, and which is required for the sale of goods, is a tax upon the goods themselves, in effect. (*Welton v. State of Missouri,* 91 U. S. 275-278; 1 Desty on Taxation, 300 et seq.; Burroughs on Taxation, 146 et seq.) Uniformity is as necessary to a tax levied or collected to aid the police power as it is in taxation for any other purpose. (*Durachs' Appeal,* 62 Pa. St. 491; *Sacramento v. Crocker,* 16 Cal. 119; *Wiley v. Owens,* 39 Ind. 429; *Slaughter v. Commonwealth,* 13 Gratt. 767; 1 Hare's Constitutional Law, 296 et seq.; *Pleuler v. State,* 11 Neb. 558, 10 N. W. 481; Burroughs on Taxation, sec. 54.)

SULLIVAN, C. J.—This is an action brought to recover from the defendants the sum of $125, alleged to be due the state for a license for selling intoxicating liquors for the quarter commencing October 1, 1891, and involves the constitutionality of an act entitled "An act to regulate the sale of intoxicating liquors," approved February 6, 1891. (See Idaho 1st Sess. Laws, p. 33.) The case was tried upon an agreed stipulation of facts, and judgment rendered by the court below in favor of the plaintiff, from which judgment this appeal was taken. The appellants contend that the court below erred (1) in holding that section 4 of said act approved February 6, 1891, was constitutional; and (2) in case said section is constitutional, then the court erred in rendering judgment against the defendants for more than seventy-five dollars.

After the case was submitted to this court, Messrs. Hawley & Reeves having been retained to present to the district court of the third judicial district, and from that court to this court, for final decision, a case involving the constitutionality of said act, approved February 6, 1891, upon their application were permitted to present their printed brief in this case, to be considered by this court in the final determination of the case. In addition to the two points raised by appellant's specification of

errors, Messrs. Hawley & Reeves contend that said act is void, for the reason that it was not legally passed or enacted by the legislature; that the legislature in its pretended enactment thereof violated the provisions of article 3 of the constitution of Idaho, in this: that the House of Representatives amended the title of said act after it had passed the Senate, and failed to return said bill, with its amended title to the Senate for its concurrence thereto.

We will first consider the point as to whether said act was legally enacted by the legislature. The passage of the act in question occurred as follows: The bill was introduced in the House of Representatives, January 5, 1891, and designated as "House Bill No. 24," and entitled "An act to regulate the sale of intoxicating liquors in less quantities than one quart" (see House Jour. 1891, p. 45) and was thereafter passed and transmitted to the Senate. The Senate passed the bill, with amendments February 3, 1891. The bill was then returned to the House, with the Senate amendments, and on the fifth day of February, 1891, the bill, with the Senate amendments, was taken up by the House, and adopted and concurred in. It was then moved to amend the title to said bill by striking out the following words, to wit, "in less quantities that one quart," which amendment was agreed to, and said words, stricken out. (See House Jour., pp. 114, 115.) The bill was not returned to the Senate for its concurrence in the House amendment of the title, but was referred to the committee on enrollment, and thereafter reported as correctly enrolled, and presented to the governor for his approval, with the title as amended, on February 6, 1891, and approved by him on that day. The provisions of section 4 of said bill, when first introduced in and passed by the House of Representatives, related to the sale of intoxicating liquors in less quantities than one quart, but when amended by the Senate related or applied to intoxicating liquors to be drank in, on, or about the premises where sold, regardless of the quantity.

The Senate, after so amending the bill as to strike out all provisions contained therein in regard to the quantity of intoxicating liquors sold, omitted or failed to strike out of the title that part thereof referring to quantity. That failure or omission may be regarded as a mere oversight or clerical error.

After the Senate amended said bill, that part of the title refer-ring to the quantity of liquor sold was mere surplusage, as no part of said act contained any provisions referring to the quan-tity. The amendment of the title, as made by the House of Representatives, was not one of substance, and did not invali-date the act. (*Plummer v. People,* 74 Ill. 361; *Ballou v. Black,* 17 Neb. 389, 23 N. W. 3; *Binz v. Weber,* 81 Ill. 288; *Johnson v. People,* 83 Ill. 435.) It is also contended that said act is in contravention of section 16, article 3 of the constitution of Idaho, in this: that the subject matter of the act is not em-braced in the title thereof, so far as the license tax is concerned; hence that part of the act relating to the license is void for that reason. Judge Cooley, in his work on Constitutional Limita-tions, sixth edition, pages 171, 172, states the purpose of consti-tutional provisions, such as we have in said section 16, article 3, as follows: "It may therefore be assumed as settled that the purpose of these provisions was (1) to prevent hodgepodge or 'log-rolling' legislation; (2) to prevent surprise or fraud upon the legislature by means of provisions in bills of which the title gave no intimation, and which might therefore be overlooked, and carelessly and unintentionally adopted; and (3) to fairly apprise the people, through such publication of legislative pro-ceeding as is usually made, of the subjects of legislation that are being considered, in order that they may have opportunity of being heard thereon, by petition or otherwise, if they shall so desire." He further says: "The general purpose of these provisions is accomplished when a law has but one general ob-ject, which is fairly indicated by the title. To require every end and means necessary and convenient for the accomplishment of this general object to be provided for by a separate act re-lating to that alone would not only be unreasonable, but would actually render legislation impossible." (Cooley's Constitu-tional Limitations, 172.) Section 16, article 3 of the consti-tution must be given a reasonable construction. It is sufficient if the act treats of but one general subject, and that subject ex-pressed in the title. To hold that each subdivision of the sub-ject, and each and every of the ends and means necessary for the accomplishment of the object of the act, must be specifically mentioned in the title, would greatly embarrass legislation, and

accomplish no legitimate purpose. The title to said act is comprehensive enough to include all provisions necessary and convenient to regulate the sale of intoxicating liquors. It is comprehensive enough to include the provisions of said act in regard to a license tax, that being one of the means usually employed for the purpose of regulating the sale of intoxicating liquors.

It is contended that section 4 of the act in question is in conflict with the provisions of sections 2 and 5 of article 7 of the constitution of Idaho, requiring equality and uniformity of taxation upon the same class of subjects. Section 4 of said act provides as follows: "The amount to be paid by each applicant for such license shall be the sum of $500 per year, or a proportionate amount for each fraction of a year, in any city, town, village, or hamlet where, at the last general election next preceding the date of the application for license, the total vote for governor exceeded one hundred and fifty votes, and $300 per year in all other cities, towns, villages, or hamlets; provided, that all persons engaged in retailing liquors in connection with a hotel or tavern where meals and lodgings are kept and furnished in good faith for the entertainment of travelers, at any point distant three miles or more outside of the limits of any city, town, village, or hamlet, shall pay a license therefor of $100 per year or a proportionate amount for each fractional part of a year; and provided, further, that no license issued under the provisions of this act shall be for a less time than three months, and no license shall be granted for a longer period than one year." Section 2, article 7 of the constitution is as follows: "The legislature shall provide such revenue as may be needful, by levying a tax by valuation, so that every person or corporation shall pay a tax in proportion to the value of his, her, or its property, except as in this article hereinafter otherwise provided. The legislature may also impose a license tax both upon natural persons and upon corporations, other than municipal, doing business in this state; also a *per capita* tax; provided, the legislature may exempt a limited amount of improvements upon land from taxation." Section 5 of said article 7 is as follows: "All taxes shall be uniform upon the same class of subjects, within the territorial limits of the authority levying

the tax, and shall be levied and collected under general laws, which shall prescribe such regulations as shall secure a just valuation for taxation of all property, real and personal; provided, that the legislature may allow such exemptions from taxation from time to time as shall seem necessary and just, and all existing exemptions provided by the laws of the territory shall continue until changed by the legislature of the state; provided, further, that duplicate taxation of property for the same purpose, during the same year, is hereby prohibited."

We are of the opinion that the provisions of said sections of the constitution requiring equality and uniformity of taxation upon the same class of subjects do not apply to the license tax provided for in said section 4 of said act. No one can doubt. (who reads the act in question) that the intention of the legislature, in its passage, was to regulate a traffic which was believed by them to be pernicious in its effects upon society, and not for the purpose of raising revenue. The principal object was to regulate such trafic, not to raise revenue. The constitutional provision in regard to equality and uniformity of taxation has reference solely to "taxation," pure and simple, according to the commonly accepted meaning of that term, for the purpose of revenue only. It does not apply to those impositions made under the police power of the state, as a means of constraining and regulating a business that may be regarded as evil in its effects upon society. In Burroughs on Taxation (page 147) it is stated that the provisions of the constitution as to equality and uniformity of taxation do not apply to licenses. (See, also, 1 Desty on Taxation, 305, note 5; 2 Desty on Taxation, 1385 et seq.; *Fahey v. State,* 27 Tex. App. 146, 11 Am. St. Rep. 182, 11 S. W. 108; *Allentown v. Gross,* 132 Pa. St. 319, 19 Atl. 269; *Pleuler v. State,* 11 Neb. 547, 10 N. W. 481; *East St. Louis v. Wehrung,* 46 Ill. 392; *People v. Thurber,* 13 Ill. 554; *Wiggins Ferry Co. v. East St. Louis,* 102 Ill. 560; *Distilling Co. v. Chicago,* 112 Ill. 19; *New Orleans v. Railroad Co.,* 41 La. Ann. 519, 7 South. 83.)

The contention that said section 4 is unconstitutional, for the reason that the license tax is not the same on each person engaged in selling intoxicating liquors, is fully answered by the authorities last above cited. Under said act the license tax is

graduated by the number of votes cast for governor at the last general election next preceding the date of the application for a license. If the total vote cast for governor at such election exceeds one hundred and fifty votes, then the applicant is required to pay a license of $500 per annum; and if such vote did not exceed one hundred and fifty votes, then the applicant must pay $300 per annum. The act in question is a police regulation, and, as such, the price of licenses may be graduated as indicated therein. In *Ex parte Marshall,* 64 Ala. 266, Justice Stone, delivering the opinion of the court, says: "Inasmuch as the price of a license may be graduated by the populousness of the community in which the privilege is to be exercised, and by the profitableness of the employments, amusements, games, etc., it authorizes, this assessment is not obnoxious to the objection that it is not levied equally throughout the taxable district." (See, also, *East St. Louis v. Wehrung, supra; State v. O'Hara,* 36 La. Ann. 93; *New Orleans v. Railroad Co.,* 41 La. Ann. 519, 7 South. 83; *Allentown v. Gross,* 132 Pa. St. 319, 19 Atl. 269.) In *Newton v. Atchison,* 31 Kan. 151, 47 Am. Rep. 486, 1 Pac. 288, the court holds that a license tax may be graduated by some standard, provided such standard is fair and just. We are of the opinion that the intention of the legislature was to graduate the license tax for selling intoxicating liquors by the populousness of the community in which the business was carried on, and the method of ascertaining such fact was by referring to the vote cast for governor at the election next preceding the application for a license. The standard for graduating the license tax, prescribed by the act in question, is reasonably fair and just. The judgment of the court below is affirmed with costs of this appeal.

Morgan and Huston, JJ., concur.